UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
RUPERT ALLEYNE,                                    :
                                                   :
                           Plaintiff,              :   **MEMORANDUM AND ORDER**
                                                   :
      -against-                                    :   04-CV-5245 (DLI) (JMA)
                                                   :
AMERICAN AIRLINES, INC., and LOCAL 501             :
OF THE TRANSPORT WORKERS                           :
UNION OF AMERICA,                                  :
                                                   :
                           Defendants.             :
----------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff, Rupert Alleyne, brings this action against Defendants, American Airlines, Inc. ("AA"), and Local 501 of the Transport Workers Union of America ("TWU") alleging race-based discrimination in violation of Title VII of the Civil Rights Act ("Title VII") (42 U.S.C. § 2000e *et. seq.*) and Article 15 of the New York State Executive Law. Pursuant to Fed. R. Civ. P. 12(b)(6), defendants move to dismiss plaintiff's claims on two independent grounds: (1) plaintiff's claims are preempted by the Federal Railway Labor Act ("RLA") (29 U.S.C. § 145 *et. seq.*) and subject to mandatory arbitration, and (2) plaintiff failed to file a timely charge with the United States Equal Employment Opportunity Commission ("EEOC") and, thus, is barred from seeking relief in Federal Court. For the following reasons, defendant's motion is granted.

**Background**[1]

In 1994, plaintiff Rupert Alleyne, an individual of African American descent, began work as a Fleet Service Clerk with AA. (Compl. ¶¶ 16-17.) He was stationed at John F. Kennedy International Airport until May 2003, when he was transferred to Fiorello LaGuardia Airport. (*Id.*)

---

[1] The following facts are set forth in plaintiff's complaint and are assumed to be true for the purposes of this motion.

From January 2002 to February 15, 2002, plaintiff was reassigned as a Management Personnel Replacement ("MPR"). (*Id*. at ¶ 20.) During his employment, plaintiff was a member of the TWU. (*Id*.)

As a member of the TWU, plaintiff was subject to a Collective Bargaining Agreement ("CBA") between AA and the TWU, which governs TWU member's seniority status. (*Id*. at ¶¶ 18, 21); (*see also* Rodriguez Aff. Exs. 1 and 2, Article 10.) Pursuant to the CBA, "[a]n employee who accepts a temporary or acting assignment with [American Airlines] as a manager, supervisor or any special assignment outside the scope of this Agreement will not exceed a period of three hundred and twenty (320) hours for all time worked in any calendar year." (Rodriguez Aff. Exs. 1 and 2, Article 10(g).) Article 10 further provides that "[a]n employee who exceeds three hundred and twenty (320) hours in any calendar year will forfeit all Occupational seniority." (*Id*.) Article 10(e) explains that "Occupational seniority" is equivalent to "Occupational group Title Seniority," which govern[s] all employees in the case of . . . retention in case of reduction in force, and reemployment after release due to reduction in force." (*Id.*)

From January 2002 to February 2002, pursuant to Art 10(g) of the CBA, plaintiff was working outside the scope of the CBA as an MPR. (Compl. ¶ 20-21.) Plaintiff worked as an MPR for a total of 323 hours in the 2002 calendar year in violation of the CBA Art 10(e). (*Id*. at ¶ 22.) As a result, "in a letter dated March 4, 2002, David Virella, 1st Executive Vice President [of AA], advised Gary Yingst, System Coordinator [of] TWU [] that although [AA] violated the [CBA], by having plaintiff work more than 320 hours as an MPR, it was requesting that the TWU 'take the necessary steps' to revoke plaintiff's seniority." (*Id*. at ¶ 23.) "Plaintiff advised the [TWU] that [AA] had him work overtime at times when he should not have and, therefore, he should not have

exceeded 320 hours." (*Id*. at ¶ 24.) On or about March 4, 2002, plaintiff's seniority was revoked. (*Id*. at ¶ 24.) On June 13, 2003, plaintiff was notified that he was being laid off because his seniority was revoked. (*Id*. at ¶¶ 19, 23-25.) Moreover, plaintiff was ineligible for rehire because his seniority was revoked. (*Id*.)

On March 3, 2004, plaintiff filed a Charge of Discrimination with the EEOC. (*Id*. at ¶ 7.) On September 9, 2004, the EEOC issued a "right to sue" letter, giving plaintiff ninety days from receipt of the letter to file an action in federal district court. (*Id*. at ¶ 9.) On December 3, 2004, plaintiff filed the complaint herein alleging that "defendants acted together to revoke his seniority rights so that he would ultimately be laid off because of his race," in violation of Title VII and the New York Executive Law. (*Id*. at ¶¶ 10, 27.) The instant motion followed.

## **Discussion**

As a prerequisite to filing a civil action in federal court, Title VII requires a plaintiff to file an administrative charge with the EEOC or a local equivalent agency within 300 days after the alleged discriminatory acts. 42 U.S.C. § 2000e-5(e)(1); *Butts v. City of New York Dep't of Hous. & Pres. & Dev.*, 990 F.2d 1397 (2d Cir. 1993) (holding that a district court only has jurisdiction to hear Title VII claims that are included in an EEOC charge); *Crossman v. Crosson*, 905 F.Supp. 90, 92 (E.D.N.Y. 1995). The 300-day period begins "at the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." *See Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (citing *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980)) (emphasis in original). Moreover, "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Ricks*, 449 U.S. at 257 (finding that the discriminatory acts complained of occurred, and thus, limitations period commenced, at time tenure

decision was made and communicated to plaintiff). Thus, "the timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision." *O'Malley v. GTE Serv. Corp.*, 758 F.2d 818, 820 (2d Cir.1985).

Plaintiff contends that "the 300-day period did not begin to run until June 13, 2003, when he was advised that he was being laid off." (Pl. Mem. in Opp. at 7.) Plaintiff attempts to distinguish *Ricks* on the grounds that the alleged denial of tenure in that case "was definite notice of termination and the termination was the inevitable consequence" of the denial, whereas here, "[p]laintiff's termination was not the inevitable consequence of his loss of seniority." (Pl. Mem. in Opp. at 8.) The Court rejects plaintiff's contention and his distinction of *Ricks*.

Federal employment discrimination laws do not protect employees just against discriminatory termination or discharge. The laws protect employees against any significant job-related discrimination, including discrimination affecting employee benefits. *See, e.g.,* 42 U.S.C. §§ 2000e-2(a), 12112(a). "Seniority is an important employee benefit because, like academic tenure . . . it provides job protection." *See also Kennedy v. Chem. Waste Mgmt., Inc.*, 79 F.3d 49, 50 (7th Cir. 1996) (citing *Ricks*, 449 U.S. 250). Thus, deprivation of seniority is an injury that sets the 300-day period running, "even though the injury is contingent rather than actual unless and until job protection is needed." *Kennedy*, 79 F.3d at 50, *reh'g denied*, (7th Cir. 1996). In *Kennedy*, a former employee was temporarily reassigned to a non-union position resulting in loss of seniority. After the employee returned to a union position, he was laid off during ordinary force reduction because he lacked seniority. *Id.* Relying on *Ricks*, the Seventh Circuit reasoned that:

> [w]hile in this case the loss of seniority was a probabilistic rather than a certain prelude to the loss against which seniority was a barrier . . . we do not think this should matter. Many valuable job benefits are contingent. No one would doubt that taking away an employee's health insurance because of his race was a violation of

-4-

> Title VII of which the employee could complain the moment it was taken away, even though until he got sick and needed health insurance he would not have suffered a "real" injury.

*Id.* (internal citations omitted). This Court agrees that loss of seniority is the alleged discriminatory act that triggers the start of the 300-day period within which plaintiff had to file a timely EEOC charge.

Moreover, plaintiff admits that "[h]ad [he] not allegedly exceeded 320 hours, he would not have been laid off." (Compl. ¶ 25.) Plaintiff further alleges that "[t]he loss of the seniority has also affected plaintiff's ability to be rehired, which is also based upon seniority." (*Id.*) Thus, plaintiff confirms that the discriminatory act he complains of is his loss of tenure and that his lay off and ineligibility for rehire was an inevitable consequence to his loss of seniority, which occurred in March 2002.

Here, under the terms of the CBA,[2] when plaintiff worked over 320 hours in 2002, he was at risk of losing his seniority. *See* Rodriguez Aff. Exs. 1 and 2, Article 10(g). Plaintiff received notice of the alleged discriminatory act when Virella issued the letter directing that plaintiff's seniority be revoked on or about March 4, 2002. (*Id.* at ¶ 23.) Accordingly, plaintiff's time to file his EEOC charge expired 300 days later, *i.e.*, on or about December 29, 2002. Plaintiff's EEOC claim was untimely. Consequently, plaintiff is barred from filing the instant Title VII action.

---

[2] Since a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "challenges the facts alleged on the face of the complaint . . . or, more accurately, the sufficiency of the statements in the complaint," only certain matters outside of the plaintiff's complaint may be considered. *See Cortex Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied sub nom. Cortex Indus., Inc. v. Westinghouse Credit Corp.*, 503 U.S. 960, (1992). Specifically, the Second Circuit permits the trial court to consider documents incorporated into the complaint by reference and documents of which the plaintiff relied on in bringing suit. *See id.*; *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Here, plaintiff relies heavily on the CBA in bringing this action. Thus, the Court will consider the CBA in deciding this motion.

Although the Court may elect to hear an action because, like a statute of limitations, "the requirement of filing a timely charge of discrimination with the EEOC . . . is subject to waiver, estoppel, and equitable tolling," *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127 (1982), such equitable modification is not permitted, unless "the employee was actively misled by his employer, he was prevented in some extraordinary way from exercising his rights, or he asserted his rights in the wrong forum . . . ." *See Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 26 (2d Cir. 1985), *cert. denied*, 474 U.S. 851, 106 S. Ct. 148 (1985). Here, plaintiff has not met the heavy burden of establishing that he was prevented, in some extraordinary way, from exercising his rights to warrant bypassing the statutory prerequisite. Plaintiff's only relevant assertion is that he "attempted to have defendant Union grieve the matter on his behalf," and that the "Union refused to assist" him. (Compl. ¶ 26.) However, TWU's refusal to assist plaintiff did not prevent plaintiff from exercising his rights or filing an administrative charge with the EEOC. In fact, plaintiff filed his EEOC charge, albeit long after the 300-day statutory limit. Thus, defendants did not prevent plaintiff from filing a timely EEOC charge and plaintiff is not entitled to an equitable waiver of the statutory prerequisite for filing a timely EEOC charge.[3]

---

[3] Because the Court finds that plaintiff failed to file a timely EEOC charge, the Court does not reach the issue of whether plaintiff's claims are preempted by the RLA.

## **Conclusion**

Based on the foregoing, plaintiff's Title VII claim is dismissed. The court declines to exercise supplemental jurisdiction over plaintiff's New York State Executive Law claim. Accordingly, it is hereby ORDERED that defendant's motion to dismiss is GRANTED and plaintiff's action is dismissed in its entirety.

DATED:      Brooklyn, New York
               March 7, 2007

/s/
DORA L. IRIZARRY
United States District Judge